IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOHN O.,[1] | Case No. 6:20-cv-01998-JR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff John O. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits and Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Born in 1967, plaintiff alleges disability beginning July 7, 2017, due to shoulder injury with numbness and loss of feeling, extreme anxiety disorder, persistent depressive disorder, borderline post-traumatic stress disorder ("PTSD"), moderate to severe stress disorder, and aggressive anger disorder. Tr. 13, 21, 175. His application was denied initially and upon reconsideration. Tr. 13. On October 16, 2019, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 28-56. On December 23, 2019, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-23. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 15. At step two, the ALJ determined the following impairments were medically determinable and severe: "dysfunction of the shoulder joint in the left upper extremity; a persistent depressive disorder with intermittent major depressive episodes, moderate; and an unspecified anxiety disorder." Tr. 15. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 16-17.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work except:

> [H]e can never reach overhead with the left (non-dominant) upper extremity. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] can never crawl. [Plaintiff] can tolerate only occasional interactions with coworkers or supervisors,

2 – OPINION AND ORDER

and no interaction with the general-public. [Plaintiff] requires a static work environment with few changes in work routines or settings.

Tr. 17.

At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. Tr. 21. At step five, the ALJ concluded, based on the VE's testimony, that there existed a significant number of jobs in the national economy that plaintiff could perform despite his impairments. Tr. 21-22.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discounting plaintiff's subjective symptom testimony; and (2) rejecting the medical opinion of Alan Silver, PsyD. Pl.'s Br. Supp. Compl. Review 5-17. ("Pl.'s Br.") (doc. 12). The Commissioner responds that the ALJ provided clear and convincing reasons supported by substantial evidence in discounting plaintiff's testimony, and reasonably assessed Dr. Silver's opinion under the appropriate regulations. Def.'s Br. 6-16 (doc. 15). For the reasons discussed below, this case is affirmed.

**I.    Subjective Symptom Testimony**

Plaintiff argues the ALJ did not properly evaluate his subjective symptom testimony. Pl.'s Br. 5-12. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject [the plaintiff's] testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit

3 – OPINION AND ORDER

the reviewing court to conclude that the ALJ did not arbitrarily discredit the [plaintiff's] testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the plaintiff's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the plaintiff's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified he has constant pain in his left shoulder with severe numbness. Tr. 33. He testified he is unable to push, pull, or lift any weight with his left arm. Tr. 34, 35. Plaintiff further testified he has problems with anger; he noted that, at the time of the hearing, he had recently fractured a bone in his right wrist because he attempted to hit someone, missed, and hit a wall instead. Tr. 37-38. He explained that he "physically explode[s]" when someone yells or screams at him. Tr. 38.

In discrediting plaintiff's testimony, the ALJ determined that plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 18. Contrary to plaintiff's contention otherwise, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony based on (1) inconsistencies with the medical record, (2) plaintiff's treatment, and (3) plaintiff's daily activities.

First, the ALJ determined that plaintiff's statements were inconsistent with evidence in the medical record. Tr. 18, 20. Although subjective symptom testimony may not be wholly rejected based on a lack of corroborating objective medical evidence, medical evidence is still a

relevant factor in determining the severity of a plaintiff's symptoms. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). And "[c]contradiction with the medical record is a sufficient basis for rejecting a [plaintiff's] subjective testimony." Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir. 2008).

Regarding plaintiff's physical impairment, the ALJ pointed to electrodiagnostic and medical imagining studies spanning from 2016 through 2019 that showed unremarkable and normal findings of plaintiff's left shoulder. Tr. 18, 231, 335-37, 341-42, 359-60, 367, 392, 400, 404, 417-18, 427. The ALJ also relied on musculoskeletal and neurological examinations that demonstrated four out of five muscle strength on the left side, no swelling, no deformity, intact coordination, and otherwise five out of five muscle strength with intact sensation and muscle tone. Tr. 18, 239, 244, 248, 261, 267, 287-88, 291-92, 297, 376, 395, 399, 405, 427.

Regarding plaintiff's mental health impairments, the ALJ established that plaintiff had been diagnosed with a depressive disorder and an unspecified anxiety disorder, tr. 19, 215, 268, 284, 384, but found his testimony inconsistent with evidence in the medical record. In particular, the ALJ pointed to evidence of mental status examinations, from 2015 through 2019, that overall demonstrated plaintiff's alertness, orientation, cooperative demeanor with normal behavior, normal speech and memory, adequate hygiene and grooming, intact attention, average intellectual function and thought process with a normal thought content. Tr. 19, 213-14, 219-22, 229, 238-39, 241, 244, 248, 256, 258, 261, 268, 271, 277, 287-92, 376, 385, 388, 395, 399-400, 406-15, 420-21, 423.  In sum, the ALJ relied on substantial evidence in discounting plaintiff's subjective symptom testimony based on inconsistences with the medical record.

Second, the ALJ determined that plaintiff's symptom testimony was inconsistent with his treatment. When weighing a plaintiff's allegations, an ALJ can consider the type and

5 – OPINION AND ORDER

effectiveness of medication and other treatment that a plaintiff takes to relieve his symptoms, as they are "an important indicator of the intensity and persistence of [a plaintiff's] symptoms." 20 C.F.R. § 416.929(c)(3). "[E]vidence of 'conservative treatment'" is sufficient to discount a [plaintiff's] testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (quoting Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)).

The ALJ properly considered plaintiff's treatment for both his physical and mental impairments in discounting his testimony. For his physical impairments, evidence in the record reflects that plaintiff tried multiple treatments, including anti-inflammatories, steroids, muscle relaxers, and over-the-counter pain medication. Tr. 18, 258, 288, 298, 377, 432. Over-the-counter pain medication is one example of evidence of conservative treatment. Parra, 481 F.43d at 750-51. The ALJ noted that plaintiff's treatment for his physical impairment "has been very conservative, largely over-the-counter and prescription medication," and that plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." Tr. 20.

For his mental impairments, plaintiff was treated with therapy and multiple forms of medication, which demonstrated some improvement in plaintiff's symptoms that included mood stability. Tr. 19-20, 268, 284, 392, 396. In November 2018, plaintiff reported he was "doing very well from a mental perspective." Tr. 396. Thus, it was reasonable for the ALJ to conclude that the level and frequency of treatment, as well as evidence of plaintiff's improvement with treatment, was inconsistent with plaintiff's testimony concerning the severity of his impairments. See Molina, 674 F.3d at 1114.

Finally, the ALJ determined that plaintiff's testimony was not fully supported by his activities of daily living. Tr. 20. When assessing credibility, the ALJ "may consider, among other

factors, . . . 'the claimant's daily activities.'" Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (internal citation omitted); see 20 C.F.R. § 416.929(c)(3). The ALJ pointed to evidence that plaintiff performs adequate self-care, helps care for his sister, prepares simple meals, performs household chores, and does yard work. Tr. 17, 20, 212, 250, 384, 386, 390, 411, 422. Additionally, evidence in the record indicates that plaintiff performed work activities such as picking beans, tr. 295, and recreational activities such as fishing, camping, gathering wood, playing with radio-controlled cars, and walking the dog. Tr. 20, 213, 270, 273, 277, 290, 295, 384, 386, 390-91, 411, 412. Thus, it was reasonable for the ALJ to conclude that "[t]hese activities indicate a higher level of functioning than that alleged by [plaintiff]." Tr. 20.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, to discount plaintiff's subjective symptom testimony. The ALJ appropriately relied on inconsistencies with the medical evidence, evidence of plaintiff's treatment, and plaintiff's activities of daily living to discredit plaintiff's testimony. Although plaintiff may disagree with the ALJ's interpretation of the record, the ALJ's interpretation is supported by substantial evidence, which precludes the Court from engaging in second-guessing. See Thomas, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

**II.    Dr. Silver's Medical Opinion**

Plaintiff argues the ALJ improperly rejected Dr. Silver's medical opinion. Pl.'s Br. 13-17. The ALJ is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider all the medical opinions in the record and evaluate each medical opinion's persuasiveness using several factors. Id. The two most important factors in determining a

medical opinion's persuasiveness are the opinion's "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must articulate "how [he or she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [his or her] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2).

Regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain how he considered other factors unless the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. See 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3). Moreover, in reviewing the ALJ's decision, the Court must consider whether the ALJ's analysis is supported by substantial evidence. See 42 U.S.C. § 405(j); see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).

Dr. Silver, a licensed psychologist, met with plaintiff five times for behavioral health services between April 2019 and June 2019. Tr. 442. In August 2019, Dr. Silver wrote in a letter to plaintiff's attorney that, due to the "severity and chronic nature" of plaintiff's mental health symptoms, plaintiff "would likely struggle to maintain an 8-hour x 5 day/week work schedule." Tr. 443. Dr. Silver noted that plaintiff "often experiences low distress tolerance and reacts impulsively (e.g., verbal aggression), so "he would likely struggle with feedback or criticism from other employees, as well managers/employers." Id. He further reported that "[l]ow distress

tolerance would likely also impact his ability to maintain attention and concentration during the workday (e.g., distraction when angered)." Id. Dr. Silver did not provide any limitations specific to plaintiff's functioning at work, and expressly noted that "specific recommendations and limitations regarding his functioning in an employment setting are beyond the focus of the treatment episode." Id.

The ALJ found Dr. Silver's medical opinion unpersuasive "because his opinion is not consistent with the overall evidence of record, including examination findings of Dr. Susan South, Psy.D., nor are the limitations consistent with [plaintiff's] reported improvement from therapy in 2019." Tr. 20-21. Dr. South performed a psychodiagnostics exam of plaintiff in March 2015. Tr. 211-15. Dr. South noted that, upon examination, plaintiff was alert and orientated, cooperative, had intact judgment and insight, and was functioning in the average range of intelligence with intact memory. Tr. 213-215. Dr. South ultimately opined that plaintiff's "mental health symptoms could impede his ability to maintain gainful employment if left untreated." Tr. 215.

The ALJ's conclusion that Dr. Silver's opinion was unpersuasive is supported by substantial evidence. As an initial matter, Dr. Silver specifically noted his findings were not intended to be used in assessing plaintiff's functioning in an employment setting. Tr. 443. Although plaintiff argues the ALJ erroneously relied on Dr. South's examination findings because they predated the alleged onset of disability and are of "limited relevance," Pl.'s Br. 15 (citing Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008)), Dr. South's opinion is consistent with the evidence in the record concerning plaintiff's functional limitations in a work setting. See Tr. 213-14, 219-22, 229, 238-39, 241, 244, 248, 256, 258, 261, 268, 271, 277, 287-92, 376, 385, 388, 395, 399-400, 406-15, 420-21, 423. Moreover, as the ALJ

9 – OPINION AND ORDER

noted, Dr. Silver's opinion is inconsistent with evidence demonstrating plaintiff's improvement with treatment and therapy. Tr. 19-21, 268, 284, 392, 396. Accordingly, the ALJ adequately considered the supportability and consistency of Dr. Silver's opinion and did not err in finding Dr. Silver's medical opinion unpersuasive.

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED, and this action is DISMISSED.

IT IS SO ORDERED.

DATED this 10th day of February, 2022.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge